# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WANDA HARPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-1220-BMJ |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Wanda Harper, seeks judicial review of the Social Security Administration's (SSA) denial of her application for supplemental security income (SSI). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 14], and both parties have briefed their positions.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

## I. Procedural Background

On June 9, 2014, Plaintiff protectively filed an application for SSI, alleging her disability began on May 2, 2011. AR 11. On August 31, 2016, in a brief to the Administrative Law Judge (ALJ), Plaintiff stated "Claimant will stipulate that if a finding of disability is made, the <u>amended</u> onset date should be February 16, 2015." *Id.* at 273 (emphasis in original). On October 21, 2016, the ALJ issued an unfavorable decision finding Plaintiff has not been under a disability since June 9, 2014, her application date, and therefore, is not entitled to SSI. *Id.* at 11-19. The Appeals

---

[1] Citations to the parties' briefs reference the Court's CM/ECF pagination.

Council denied Plaintiff's request for review. *Id.* at 1-7. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

## II. **The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 416.920. The ALJ first determined Plaintiff has not engaged in substantial gainful activity since June 9, 2014, her application date. AR 13.

At step two, the ALJ determined Plaintiff suffers from the following severe impairments: "degenerative disc disease, depression, and a panic disorder." *Id.* Then, at step three, the ALJ found Plaintiff's impairments do not meet or medically equal Listings 12.04 or 12.06, impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 13-14.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that she:

> [can] perform light work. [She] can lift and carry up to ten pounds frequently, twenty pounds occasionally. She can stand and/or walk at least six hours in an eight-hour workday, and can sit for at least six hours in an eight-hour workday. She can perform simple repetitive tasks and can relate to supervisors and co-workers on a superficial basis only. She cannot work with the public.

*Id.* at 14-15.

At step four, the ALJ determined Plaintiff has no past relevant work, *id.* at 17, and at step five, found Plaintiff can perform unskilled work as an inspector packer and poultry processor, work existing in significant numbers in the national economy. *Id.* at 18. Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. *Id.* at 18-19.

2

### III.     Claims Presented for Judicial Review

Plaintiff alleges that: (1) the ALJ erred in relying on Dr. Brad Liston, D.O.'s "stale" opinion; (2) failed to assess and incorporate "all the [mental and physical] limitations posed by Plaintiff's impairments;" (3) mis-weighed the medical evidence; (4) failed to discuss the weight he afforded Sarah M. Coats, Ph.D.'s opinion and ignored a portion of the opinion; and, (5) failed to consider whether Plaintiff's severe degenerative disc disease meets or equals Listing 1.04. *See* Pl.'s Br. at 9-16.

### IV.     Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, it does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted). However, "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where based on the material the administrative law judge did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004).

V.      **Analysis**

   A.     **The Alleged Staleness of Dr. Liston's Opinion**

Dr. Liston examined Plaintiff once, at the SSA's request, and issued his opinion on October 3, 2014. AR 298-304. Plaintiff alleges that the ALJ erred in relying on this opinion because it was prepared "nearly one-and-a-half years" before Plaintiff's "amended" onset date of February 16, 2015. For that reason, Plaintiff believes that the ALJ had a duty to order "additionally consultative evaluation." Pl.'s Br. at 9-12. The Court affirms on this issue.

While an ALJ's reliance on a "patently stale opinion" can be "troubling," *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir.2012), the Court agrees with Commissioner that the opinion was not stale. *See* Def.'s Br. at 4-6. First, Commissioner makes a convincing argument that Plaintiff did not actually amend her onset date to February 16, 2015. *See id.* at 5. That is, in her brief to the ALJ, Plaintiff only stated that she would consider her onset date amended "if a finding of disability is made." AR 273. Further, neither Plaintiff nor her attorney objected when the ALJ said, during the hearing: "You told us you became disabled, and you put down May 2, 2011. So I need to ask you, have you worked since May 2, 2011[?]" *Id.* at 28.

Second, even assuming Plaintiff did amend her onset date to February 16, 2015, Dr. Liston's October 3, 2014 opinion was made only four-and-a-half *months* prior to that date, not one-and-a-half years earlier as Plaintiff contends. And, Plaintiff "fails to point to any evidence showing that [her] condition worsened between the time Dr. [Liston] issued his opinion and [her] alleged onset date four months later." *Hollander v. Berryhill*, No. 1:17-CV-00090-LF, 2018 WL 3360761, at *7 (D. N.M. July 10, 2018) (unpublished memorandum op. and order) (finding no error in the ALJ's reliance on an opinion pre-dating the amended onset date by four months in the absence of any evidence that the claimant's condition had worsened in that four months). Indeed,

the only objective evidence Plaintiff relies upon to suggest that her condition worsened at any time after Dr. Liston's opinion is an April 9, 2015 x-ray and a September 5, 2016 MRI. *See* Pl.'s Br. at 11-12.[2] But the ALJ considered this evidence. Regarding the April 2015 x-ray, the ALJ noted it showed only "mild levoconvex curvature of the lumbar spine," and the impression was "no acute findings." AR 16, 334. Similarly, the September 2016 MRI showed only "minimal" and "mild" disc bulges and facet arthrosis with a "[m]oderate right and mild to moderate left neural foraminal stenosis." *Id.* at 17, 462.[3] This evidence, again properly considered by the ALJ, fails to show that Plaintiff's impairments so materially changed after Dr. Liston's opinion as to render it patently stale. *See Tarpley v. Colvin*, 601 F. App'x. 641, 644 (10th Cir. 2015) (finding no error in the ALJ's giving great weight to an agency opinion that was formulated before subsequent medical records were available, in part because "nothing in the later medical records . . . supports . . . a material change in [the plaintiff's] condition that would render [the physician's] opinion stale").

Finally, even if Dr. Liston's opinion could be considered stale, the Court finds no grounds for reversal. That is, the ALJ did not give Dr. Liston's opinion any more weight than any other medical opinion, and he properly discussed the medical evidence dating from October 2011 to September 2016. AR 16-17. "Just because [the ALJ's] assessment was similar to the medical opinion[] of [Dr. Liston] does not mean that it was based solely on stale evidence." *Kearns v. Colvin*, 633 F. App'x 678, 682-83 (10th Cir. 2015) (rejecting plaintiff's argument that the ALJ

---

[2] Plaintiff also cites the many times she complained about back pain after Dr. Liston's opinion. *See* Pl.'s Br. at 11. But again, the ALJ clearly considered this evidence. AR 17 ("The medical evidence documents a history of chronic back pain . . . .").

[3] Plaintiff underwent two MRI scans on September 5, 2016. Her thoracic spine MRI showed "unremarkable . . . imagining of the thoracic spine" but "evidence of disc herniation in the mid cervical spine resulting in central canal stenosis." AR 463. The impression called for consideration of the "nonemergent MRI of the cervical spine." *Id.* That lumbar spine MRI is detailed above.

5

impermissible relied on a stale opinion where it was clear the ALJ considered all the medical evidence).

In sum, the Court finds that the ALJ did not improperly rely on a "patently stale opinion" in assessing Plaintiff's RFC, and no duty to further develop the record exists where, as here, "sufficient information existed for the ALJ to make [his] disability determination." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

### B. The ALJ's Alleged Failure to Include all Plaintiff's Limitations Into the RFC

Next, Plaintiff alleges that the ALJ "failed to incorporate [into the RFC] all of the limitations posed by Plaintiff's impairments" and failed to "properly assess Plaintiff's RFC related to her mental disabilities and limitations relevant thereto." Pl.'s Br. at 13, 14. For details, Plaintiff refers the Court to her "Statement of the Case," which chronicles her testimony and physical and mental history over six pages. *Id.* at 2-8, 13. It does not, however, include any identifiable list of any functional limitation that the ALJ failed to include in the RFC. *See id.* Notably, it is not this Court's duty to sift through her narrative or the medical evidence looking for clues that might support her argument. *See, e.g., N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x. 795, 803 (10th Cir. 2016) ("[I]t is emphatically not this court's duty to scour without guidance a voluminous record for evidence supporting [Plaintiff's] theory." (internal quotation marks and citation omitted)).

To the extent the Court can presume that Plaintiff refers to her own subjective complaints as possible functional limitations, *see* Pl.'s Br. at 3-4,[4] it notes only that the ALJ found her

---

[4] Plaintiff's allegation that the ALJ failed to incorporate Dr. Coats' opinion on functional limitations is addressed separately. *See infra* at 9-10.

subjective complaints not entirely credible. AR 18. Plaintiff does not challenge that decision, and the Court finds nothing in this conclusory argument warranting reversal.

### C. The ALJ's Alleged Mis-Weighing of the Evidence.

According to Plaintiff, the ALJ mis-weighed the September 5, 2016 lumbar spine MRI when he found that "the cervical spine did show a herniation resulting in central canal stenosis . . ., but this does not explain why [Plaintiff] allegedly can sit for only five or ten minutes, or requires use of a cane." AR 18. Plaintiff believes that because the MRI showed that the "*L-4-L5 root* is *moderately* stenosed," that it "confirms both her lower back pain and inability to sit for long periods" and "confirms her use of the cane[.]" Pl.'s Br. at 13 (emphasis in original). But the MRI also described Plaintiff's L4-L5 as showing "[m]inimal disc bulge" with only "[m]ild facet arthrosis and ligamentum flavum hypertrophy" and "[n]o significant central canal stenosis." AR 462. More importantly, because the ALJ specifically discussed all this evidence, Plaintiff's argument is little more than a request for this Court to reweigh the same evidence that the ALJ already considered. This the Court cannot do. *See Wall*, 561 F.3d at 1070 ("[the Court's] limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency" (citation and internal quotation marks omitted). Accordingly, the Court affirms on this issue.

### D. The ALJ's Alleged Failure to Assign Any Weight to Dr. Coats' Opinion

Next, Plaintiff seeks reversal on grounds that the ALJ failed to specify what weight, if any, he gave to Dr. Coats' opinion. *See* Pl.'s Br. at 13. Relatedly, Plaintiff believes the ALJ ignored Dr. Coats' finding that Plaintiff's "'emotional status may interfere with persistence through physical symptoms, social interaction, and adaption.'" *Id.* at 14 (*citing* AR 296). Again, the Court finds no grounds for reversal.

7

Dr. Coats also examined Plaintiff once, at the SSA's request. AR 294. In relevant part, Dr. Coats diagnosed Plaintiff with major depressive disorder and panic disorder without agoraphobia, and wrote:

> The patient relays a history of depression (with apparent psychotic features) and anxiety of moderate severity. Her depression and anxiety are likely to limit her pain coping skills, but of course, medical prognosis is left to the good clinical judgment of the appropriate evaluating and treating medical providers. Some limited cognitive and intellectual sophistication was noted on mental status examination, but [Plaintiff] demonstrated the capability to understand and remember instructions and persist on cognitive tasks. Abstraction skills are fair, and she would likely be limited to rote, routine, concrete, familiar tasks in a work environment. Again, her emotional status may interfere with persistence through physical symptoms, social interaction, and adaptation. Depression and anxiety can be improved with appropriate mental health care (she is currently only on a psychotropic medication, with no therapy services). However, her prognosis is likely to be further limited by her poor psychosocial support system and limited resources. Overall, prognosis is fair.

*Id.* at 296.

The ALJ discussed Dr. Coats' findings, *id.* at 16, and then incorporated her opinion into the RFC, finding in relevant part that Plaintiff can perform light physical work with "simple repetitive tasks," can "relate to supervisors and co-workers on a superficial basis only" and "cannot work with the public." *Id.* at 15. Thus, while Plaintiff is correct that the ALJ did not specifically assign any weight to Dr. Coats' opinion,[5] a common-sense reading makes clear that he did not reject it. *See, e.g., Armijo v. Astrue*, 385 F. App'x 789, 795 (10th Cir. 2010) (finding the ALJ's treatment of the physician's opinion, though not "explicitly" stated, was "implicit in his decision"); *Maxwell v. Astrue*, 268 F. App'x 807, 810-11 (10th Cir. 2008) (noting that while it "would have

---

[5] Generally, an ALJ should make it "clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion and the reason for that weight." *Allman v. Colvin*, 813 F.3d 1326, 1332 (10th Cir. 2016).

8

been preferable" for the ALJ to specifically discuss the weight he gave the medical opinion, no reversal is required when it is clear he did not reject the opinion).

Plaintiff complains that the ALJ did not incorporate *all* the limitations, because he ignored Dr. Coats' opinion that her "'emotional status may interfere with persistence through physical symptoms, social interaction, and adaptation.'" Pl.'s Br. at 14 (*citing* AR 296). But Dr. Coats did not actually assign any functional limitations based on this sentence, and the ALJ otherwise found Plaintiff specifically limited to: (1) light physical work, (2) simple repetitive tasks, and (3) only superficial contact with supervisors and co-workers and no contact with the public. *See supra* at 2. Plaintiff does not explain how these limitations fail to incorporate Dr. Coats' opinion, "even assuming such limitations were warranted." *See Giroux v. Berryhill*, No. CIV-17-139-STE, 2017 WL 5473730, at *3 (W.D. Okla. Nov. 14, 2017) (unpublished memorandum op. and order) (rejecting allegation that the ALJ ignored the physician's opinion that plaintiff "needed directions repeated at least once and was slow in responding" because the physician did not articulate any functional limitations based on this language and plaintiff did not explain how the RFC, noting plaintiff was limited to understanding, remembering, and carrying out "simple, routine, and repetitive tasks," did not account for such limitations). Finally, psychiatrist Dr. Sally Varghese, M.D., reviewed all the medical evidence and concluded that Plaintiff did not have any adaptation limitations. AR 66. The ALJ gave this opinion great weight, *id.* at 17, and Plaintiff does not challenge that finding. *See Giroux*, 2017 WL 5473730, at *3 (finding no reversible error where physician did not assess any specific functional limitation based on opinion that plaintiff needed directions repeated and was slow in responding and the RFC aligned with the state agency physicians' opinions, to whom the ALJ gave great weight).

Under such circumstances, the Court finds no grounds for reversal in the ALJ's treatment of Dr. Coats' opinion.

E.     **The ALJ's Failure to Discuss Listing 1.04**

Finally, Plaintiff alleges that the ALJ should have considered whether her severe degenerative disc disease meets or equals Listing 1.04. *See* Pl.'s Br. at 15. The Court finds any error here is harmless.

"At step three, if a claimant can show that the impairment is equivalent to a listed impairment, [s]he is presumed to be disabled and entitled to benefits." *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citation omitted). Relevant here, Listing 1.04 applies to "[d]isorders of the spine (e.g., herniated nucleus polposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture)[.]" 20 C.F.R. Pt. 404, subpt. P, App. 1, § 1.04.

> The criteria for this listing require nerve root compression resulting in limited range of motion and motor loss with muscle weakness, § 1.04A; arachnoiditis with severe burning or painful dysesthesia resulting in the need for postural changes more than once every two hours, § 1.04B; or spinal stenosis resulting in the inability to ambulate effectively, § 1.04C.

*Fisher-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) (citations omitted). Though Plaintiff subjectively complained about these limitations, the ALJ found her to be less than credible and she does not challenge that assessment. *See supra* at 6-7. And, the ALJ's RFC findings – particularly the finding Plaintiff retains the "primary postural capacities, i.e., sitting, standing, walking" for light work – negates "any finding that [Plaintiff] is presumptively disabled under the pertinent listing." *Id.* Under such circumstances, "any deficiency in the ALJ's . . . step three determination is harmless." *Id.*; *see also Rolus v. Colvin*, No. CIV-15-1162-STE, 2016 WL 5316821, at *5 (W.D. Okla. Sept. 22, 2016) (unpublished memorandum op. and order) (finding that "the ALJ's

discussion of [all the medical evidence] confirms the step three determination and renders harmless any error in failing to specifically discuss Listing 1.04(A)").

## VI. Conclusion

For the reasons discussed above, the decision of the Commissioner is AFFIRMED.

ENTERED this 19th day of September, 2018.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE